HERVEY STRONG & another *vs.* ALONZO V. BLANCHARD & others.

If, in a suit in equity to redeem land from a mortgage, the defendant in his answer has expressly waived all objections to the redemption thereof by the plaintiff, upon the payment of all such sums as shall be found due, he cannot afterwards be allowed to insist that the mortgage had been foreclosed before the commencement of the suit.

In ascertaining the amount due to a mortgagee in a suit in equity to redeem land from a mortgage, the burden of proof is on the defendant to establish payments for which he claims allowance.

If the holder of a mortgage upon land who has entered and taken possession thereof for the purpose of foreclosure has agreed with the holders of other mortgages to waive his entry and possession, and that the parties shall occupy the land as joint property for the security and payment of their several debts, and that the land shall not be sold for five years without the consent of the mortgagor, the declarations of the holder of one of the subsequent mortgages are not thereby made competent evidence, after his death, in behalf of the others, to establish payments or expenditures for which they claim allowance under their mortgages; nor is he thereby authorized to bind the mortgagor by payments or expenditures for or on account of the land, which would otherwise be unauthorized.

A mortgagee who has paid a claim upon which he was a surety of the mortgagor, and which the mortgage was given to secure, may be allowed for the whole sum so paid, in accounting with the mortgagor, although he has afterwards received contribution of a portion thereof from a co-surety.

A mortgagee in possession of mortgaged premises is accountable for rents and profits which he might have received by the exercise of reasonable care and diligence, and cannot be allowed for payments for any purposes not strictly embraced within the provisions of the statute.

BILL IN EQUITY to redeem land from mortgages. The defendants in their answer, amongst other things, said that, " waiving for the purposes of this suit all objections to the redemption by the plaintiffs of the estate sought to be redeemed by this bill of complaint, they are ready and willing, upon the payment to them by the plaintiffs of all such sums as shall be found due to them or either of them, and also all claims and liabilities for which said property would be justly holden if the plaintiffs'

right to redeem the same were unquestioned, to remise, release and quitclaim the same to the plaintiffs."

It appeared, by the report of a master to whom the case was referred, that on the 1st of September 1851, the plaintiffs, Hervey Strong and Chester Strong, being the owners of two lots of land, made a mortgage of one lot to Alonzo V. Blanchard and John D. Blanchard, two of the defendants, to secure the sum of $4000, and on the 14th September 1852 made a mortgage of both lots to the same persons to indemnify them for certain indorsements amounting to about $4000. They also on the 24th of February 1853 made a mortgage of both lots to Hiram Converse, another of the defendants, to secure him for certain liabilities. On the 17th of March 1853 they conveyed their equity of redemption of the premises to Eliphalet Tenney. On the 24th of February 1853 the plaintiffs' equity of redemption was attached on mesne process, and on the 3d of the following September was sold to the Blanchards on execution. Peaceable possession was given to the Blanchards under their mortgages, for the purpose of foreclosure, on the 29th of July 1853. On the 2d of September 1854 the plaintiffs paid to the Blanchards the amount which they had paid to the officer as the price of the equity sold on execution, and took from them an agreement to reconvey the same on request. On the 5th of October 1855 Tenney and Converse executed to the plaintiffs a bond, reciting the mortgage to Converse and the deed to Tenney, and binding themselves to release to the plaintiffs the real estate at any time within five years from the 1st of April 1856 when the plaintiffs should pay certain notes and other sums, therein specified. On the 10th of November 1855 the Blanchards, Converse and Tenney executed an agreement, reciting that the Blanchards were in possession of the real estate under mortgages, and that the several parties had claims against the plaintiffs, secured by mortgages upon the premises, a schedule of which was annexed, and providing that the Blanchards thereby remised, released and relinquished to Converse and Tenney all right or claim to the foreclosure of their mortgages which they had acquired by possession; that the premises

should be rented as theretofore, and the rents and profits, after deducting the expense of repairs and care of the same, should be divided between the parties in proportion to the whole amount of their respective claims; that the premises should not be sold within five years from April 1, 1856, without the plaintiffs' consent, but with their consent the whole or any part thereof might be sold at any time, if the parties should desire, and the proceeds divided according to the terms of this agreement; that if the premises should not be sold within said five years, they should be sold as soon thereafter as might be, and the proceeds divided as aforesaid; and that in case of the decease of any of the parties, the survivors should have full and entire control of the premises, and might sell the same in the same manner as if all were living.   On or about the 1st of May 1856 Tenney died, and his estate proved to be insolvent; and the bill alleged that in 1859 his administrator conveyed to Converse all Tenney's right and interest to and in the premises.

The master stated a list of payments which he found had been made by the holders of the different mortgages, for liabilities secured thereby; and a list of certain other payments for similar liabilities which he found were proved, if evidence of the declarations of Tenney respecting them was competent.   It appeared that these payments were made, but it did not appear distinctly by evidence which was clearly competent, from what source the money came; and both the plaintiffs and the defendants respectively claimed that they furnished it.   It thus became important to determine upon which party the burden of proof rested, and the master referred this question to the court, stating the account in the alternative.

Under and by virtue of the contract of November 10th 1855, various expenses were incurred in the management and improvement of the real estate, which included a hotel and other buildings, and some of which were not such as are embraced within the provisions of the statute; and the defendants contended that, irrespective of the statute provisions, they were entitled to be allowed for them in their account with the plaintiffs, by reason of the contract with Tenney, who for this purpose might be

regarded as the agent or trustee of the plaintiffs. The master stated the items so claimed.

The Blanchards and Converse were jointly liable with Tenney on certain claims covered by the mortgages of the plaintiffs to them, and proved against the insolvent estate of Tenney, after his death, a portion of them, and received dividends thereon; and the plaintiffs contended, and the master found, that they must be charged with the dividends so received.

The case was reserved by *Dewey*, J., upon the bill, answer and report of the master for the determination of the whole court.

*J. Wells*, for the plaintiffs.

*H. Morris*, for the defendants.

MERRICK, J. The defendants having in their answer expressly waived, for the purposes of this suit, all objections to the redemption of all the real and personal estate sought by this bill to be redeemed, and having therein declared their willingness to remise, release and quitclaim the premises to the plaintiffs upon their payment of all sums found due and for which said property is justly holden, they cannot now be permitted to insist upon the foreclosure of the mortgages, or to deny that the right of redemption still exists. Nothing, therefore, remained after the filing of their answer, but to ascertain the amount of the several sums due to the defendants, upon the payment of which the plaintiffs are entitled to the decree prayed for in the bill. For this purpose, the case was sent to a master. His report having been made, several questions arise upon it, which are now to be determined by the court.

The defendants hold the premises merely as mortgagees. The money paid by the Blanchards on the sale of the right in equity to redeem from the mortgages was repaid to them within a year from the day of the sale, and they thereupon gave to the plaintiffs a bond obliging themselves to release and quitclaim all the rights acquired under the deed of the officer by whom the sale on the execution was made. And after the plaintiffs had by their quitclaim deed dated March 17, 1853, released all their right in the premises to Eliphalet Tenney, he and Converse, by

their bond dated October 5, 1855, agreed to release all the real and personal estate described in the mortgages, upon the payment to them by the plaintiffs, within five years next thereafter, of all the debts named in the bond. The subsequent conveyance to Converse of all his right by the administrator of Tenney only entitled him to hold the premises as security for the payment of those debts. They have, therefore, either under the conveyances directly to themselves from the plaintiffs, or from the administrator of Tenney, no other title to the premises but as mortgagees.

In ascertaining the amount due to the defendants for which they hold the mortgaged premises as collateral security, the burden of proof is upon them to establish the claims which they assert. This is especially true in relation to claims arising from the payment of debts for which they had become liable as the sureties of the mortgagors, and against which liabilities the mortgages were made and given to indemnify and protect them. If they made any such payment, they have, or ought to have, the means of showing it; and they are entitled to hold the premises only to secure a reimbursement of the moneys they have thus been compelled to advance, and which they are able to prove by competent and satisfactory evidence. This, of course, is in addition to the other debts due to them, and which are particularly mentioned and described in the mortgages.

In establishing their claims, the defendants were allowed by the master to introduce evidence of the admissions, declarations and statements of Tenney. Upon this proof, the master has found that various payments were made by the defendants, all of which are particularly enumerated in the statement of the account between the parties, and which he has allowed to them, if the evidence was competent and admissible. But it very plainly was not. Tenney is not a party to the bill, and he was not authorized by the plaintiffs to speak for them. His statements, like those of an entire stranger to the transactions, were mere hearsay, and all proof of them should have been excluded. The amount of the payments so proved should therefore be stricken from the credits allowed to the defendants in the

statement of the accounts by the master; and his report must in that particular be accordingly corrected.

It appears from the master's report that, in relation to several of the debts of the mortgagors which were paid by the Blanchards, and also in relation to several others which were paid by Converse, Tenney was a surety with them; and that after his death claims were made on these accounts against his estate for contribution. These claims were allowed, and, the estate being insolvent, the Blanchards and Converse respectively received dividends thereon. The plaintiffs contended that they were entitled to have the dividends so received, considered and treated as payments to the defendants, by which, to that extent, the premises would be relieved from the subsisting mortgages. This position was sustained by the master, and in stating the account he has accordingly deducted the amount of those dividends from the sum to be paid by the plaintiffs, in the redemption of the estate. In this, the master has mistaken the rights of the parties. The dividends received for the estate of Tenney were not paid by the plaintiffs, nor out of any funds to which they had any right; and they are not therefore entitled to derive any advantage therefrom. They are bound to pay the whole of the debt which is justly due from them, and the defendants are entitled, either in their own right, or in the right of the representatives of Tenney, to demand and recover it. Whether the defendants, after having again received the amount of their dividends upon the redemption of the mortgaged premises, will be accountable therefor to the administrator of Tenney's estate, depends upon the equities, if there are any, between them, and upon considerations which are not presented in this case, making it unnecessary now to express any opinion upon these questions. It is sufficient here to decide that no allowance therefor should be made to the plaintiffs, and that the charge for the amount of their dividends against the defendants should be struck out of the master's statement of accounts.

The defendants, being in possession of the premises for breach of the condition of the several mortgages, are accountable for the rents and profits received, and for the amount which they

might have received by the exercise of reasonable care and diligence. *Saunders* v. *Frost*, 5 Pick. 259. *Reed* v. *Reed*, 10 Pick. 398. *Miller* v. *Lincoln*, 6 Gray, 556. But against this income, they are to be allowed for all sums expended in reasonable repairs and improvements, for taxes, and for all necessary expenses incurred in the care and management of the premises. Gen Sts. *c.* 140, § 15. These are the principles upon which the account should be stated. And the defendants cannot be allowed any of their charges on account of expenditures for purposes not embraced in this description. They must be limited strictly to the rule prescribed by the statute.

They do, however, contend that Tenney, by force of the contract of the 15th of November 1855 between him and Converse and the Blanchards, became in effect the agent or the trustee of the plaintiffs; and consequently that any expenditures incurred by them in the improvement of the estate, either by the erection of new buildings, or in the alteration of others standing thereon, in pursuance of any agreement with Tenney, or with his sanction and approval, are charges which may properly be made to the plaintiffs, and which are to be paid by them upon the redemption of the premises. But all these conclusions are unwarranted. The plaintiffs were not parties to that contract, and cannot be injuriously affected by its provisions, or by anything which might be done under it. Their right of redemption was under the bond of Tenney and Converse; and after making that bond, the obligors could not lawfully make any expenditures in the improvement of the estate not authorized by the statute, which would enhance the sum to be paid by the obligees to reinstate themselves in possession of it. The account, therefore, is rightly stated by the master, without making any additional charges to the plaintiffs for moneys expended by the permission or under any supposed agreement with Tenney.

Several other questions are presented in the report; but the matters in controversy having been adjusted by the parties, it becomes unnecessary further to refer to them.